ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| WALIXSA TORRES RODRÍGUEZ<br><br>Demandante-Apelada<br><br>v.<br><br>DORIS GONZÁLEZ BONILLA<br><br>Demandada-Apelante | KLAN202301142 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm. JD2020CV00326<br><br>Sobre: Incumplimiento de Contrato |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos, Doris González Bonilla, (en adelante, "Sra. González Bonilla" o "Apelante"), quien presenta recurso de Apelación en el que solicita nuestra intervención con una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, (en adelante, "TPI"), el 8 de noviembre de 2023, notificada y archivada en autos el 13 de noviembre de 2023. En dicho dictamen, el foro de instancia declaró "*Ha Lugar*" la *Demanda* radicada por Walixsa Torres Rodríguez, (en adelante, "Sra. Torres Rodríguez" o "Apelada") y "*No Ha Lugar*" la *Reconvención* presentada por la Apelante.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

**-I-**

El 6 de noviembre de 2020, notificada en igual fecha, la Sra. Torres Rodríguez presentó una *Demanda* sobre incumplimiento de

contrato en contra de la Sra. González Bonilla.[1]  En síntesis, alegó que la Apelante se ha negado a darle fiel cumplimiento al *Contrato de Opción de Compra y Venta*, (en adelante, "Contrato") suscrito entre las partes, el 1 de abril de 2019, mediante el cual se acordó la venta de un bien inmueble perteneciente a la Apelante ubicado en Ponce, Puerto Rico y en el cual la Apelada reside actualmente.  La señora Torres Rodríguez hizo las siguientes alegaciones en la *Demanda*: (1) que conforme con el contrato, si la compraventa no se efectuaba durante el periodo establecido en el contrato, por causas imputables a la Vendedora, esta vendrá en la obligación de devolver el dinero consignado, pagando un interés al 6% como penalidad; (2) cumpliendo con lo establecido en el contrato, la Apelada solicitó un Préstamo Hipotecario en la Cooperativa de Ahorro y Crédito Agustín Burgos (en adelante, "Villacoop"), el cual fue aprobado y luego de varios intentos para contactar a la Apelante para proceder al cierre de la Hipoteca, ésta se ha negado a firmar; (3) la Apelada ha incurrido en gastos de mantenimiento y arreglos a la propiedad, los cuáles realizó con el consentimiento de la Apelante y con el convencimiento de que la compraventa se llevaría cabo.

Por su parte, el 26 de mayo de 2021, la Apelante instó una *Contestación A Demanda y Reconvención*, negando esencialmente las alegaciones de la Demanda y aceptando: (1) que se firmó un contrato de opción de compra; (2) el precio de compraventa es de $107,000.00; (3) los dos pagos de $10,000.00 cada uno; y (4) que la Apelada ha hecho pagos a la hipoteca. Aseveró que, el contrato escrito es uno de opción de compra y no de arrendamiento. Expresó que, no hubo incumplimiento de su parte sino de la Apelada al no querer pagar el precio total.  En lo pertinente a la *Reconvención,*

---

[1] En su sentencia del 8 de noviembre de 2023, el Tribunal de Primera Instancia erróneamente señala que la fecha de presentación de la Demanda fue el 20 de abril de 2021.

alegó que la Apelada ha vivido la casa gratuitamente por el término de 25 meses por lo que le adeuda la cantidad de $25,000.00 calculados en una suma de $1,000.00 mensuales.

El 5 de agosto de 2021, la Apelada solicitó *Moción En Solicitud De Sentencia Sumaria y Desestimación Con Perjuicio,* mediante la cual argumentó que: (1) no vive la residencia gratuitamente ya que realiza los pagos mensuales de la hipoteca, lo que es conocido por la Apelante; (2) la reclamación de la Apelante no surge del contrato entre las partes, sino que es un subterfugio de esta para intentar lucrarse ilícitamente de la Apelada; y (3) la Apelante no tiene prueba para sustentar la alegación de que la Apelada adeuda $25,000.00 por supuestamente ocupar la propiedad gratuitamente. Por otra parte, el 16 de septiembre de 2021, la Apelante presentó *Moción Replica A Solicitud De Sentencia Sumaria* en la que estipuló el contenido del contrato, sin embargo, argumentó que en el *Contrato* se pactó lo que la Apelante refiere como una "cláusula de escape" para la parte opcionada/vendedora donde tenía la facultad de negarse a vender la propiedad con la penalidad de devolver lo pagado por la optante más el 6% de interés. Añadió que, el contrato no incluyó nada de que la Apelada iba a ocupar la propiedad durante esos años.

Así las cosas, el 4 de marzo de 2022, el Tribunal emitió una *Resolución* en la que concluyó que aún surgían hechos en controversia a lo que se estableció en el contrato otorgado y en torno a la naturaleza misma de dicho convenio ya que no se desprendía con claridad la figura jurídica acordada entre las partes. En particular, determinó que estaban en controversia los siguientes hechos:

1. Las razones para que no se llevara a cabo la alegada compraventa de propiedad.

2.  Las alegaciones respecto a los pagos mensuales de la hipoteca y cómo se iban a adjudicar finalmente los mismos.

3.  Las alegaciones en cuanto a los gastos de mantenimiento y arreglos a la propiedad, los cuales alegadamente realizó con el consentimiento de la demanda y con el convencimiento de que la compraventa se llevaría a cabo.

4.  Las alegaciones en cuanto al alegado arrendamiento de la propiedad.

5.  La alegada deuda de $25,000.00 que reclama la demandada por la ocupación de la propiedad.

En consecuencia, el TPI declaró "*No Ha Lugar*" la moción de sentencia sumaria instada por la Apelada.

Por otra parte, el 20 de junio de 2022, se tomó una deposición a la Apelante, en la que ésta aceptó que la Apelada: (1) no vive en la propiedad gratuitamente; (2) realiza el pago mensual de la hipoteca y lo deposita en la cuenta de la Apelante; y (3) realiza el pago del préstamo hipotecario. Así las cosas, el 17 de octubre de 2022, la Apelada presentó una segunda *Moción En Solicitud De Sentencia Sumaria y Desestimación Con Perjuicio*, mediante la cual reafirmó los fundamentos hechos en la primera moción de sentencia sumaria presentada, pero añadió que se debía resolver sumariamente la *Demanda* debido a las admisiones hechas por la Apelante en la deposición. Por entender que persistían las mismas controversias de hechos sobre la ocupación de la propiedad y la adjudicación del pago, mediante *Resolución* emitida el 13 de enero de 2023, el foro primario concluyó que no procedía como cuestión de hecho y de derecho la segunda moción de sentencia sumaria. En consecuencia, esta fue declarada *No Ha Lugar*. De esta forma, el TPI estimó necesaria la celebración de un juicio plenario.

El juicio en su fondo fue celebrado el 13 de octubre de 2023. A la luz de lo anterior, el 8 de noviembre, notificada el 13 del mismo mes y año, el TPI dictó *Sentencia* mediante la cual determinó que la prueba desfilada y aquilatada estableció que la Apelante fue quien

no estuvo de acuerdo con otorgar la escritura de compraventa porque entendía que estaría perdiendo dinero en la transacción. Concluyó además, que: (1) la mensualidad pagada por la Apelada debía ser abonada al precio de venta acordado; (2) la prueba presentada no arrojó indicios de engaño, coacción o intimidación hacia la Apelante; y (3) la Apelante fue quien, al encontrarse con una ganancia menor a la mencionada en el Contrato por el abono de las mensualidades que la Apelada había pagado, se retractó de otorgar la escritura de compraventa. Por lo anterior, el foro primario declaró "*Ha Lugar*" la *Demanda* presentada por la Apelada y "*No Ha Lugar*" la *Reconvención* presentada por la Apelante. Además, ordenó el estricto cumplimiento del *Contrato* y la comparecencia de la Apelante para firmar la escritura de compraventa de la propiedad.

En desacuerdo, el 27 de noviembre de 2023, la Apelante presentó *Moción de Reconsideración* que fue declarada "*No Ha Lugar*" por el foro de instancia mediante *Resolución* dictada el 28 de noviembre de 2023. Insatisfecha, el 21 de diciembre de 2023, la Apelante presentó este recurso y le imputó al TPI la comisión de los siguientes errores:

I. ERRO (SIC) EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA DEMANDA Y DECLARAR NO HA LUGAR A LA RECONVENCIÓN, YA QUE NO SE ESTARÍA PAGANDO EL PRECIO DE COMPRAVENTA NI SE ESTARÍA EJERCIENDO LA OBLIGACIÓN DE LA DEMANDANTE DE ASUMIR LA TOTALIDAD DE LA HIPOTECA.

II. ERRO (SIC) EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DECRETAR QUE LA DEMANDANTE TIENE QUE PAGAR UNA RENTA POR VIVIR LA RESIDENCIA POR CUATRO AÑOS SIN PAGAR NI UN CENTAVO POR RENTA.

III. ERRO (SIC) EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPEDIR QUE LA DEMANDADA APELANTE PUEDA EJERCER SU DERECHO PACTADO DE RETRACTARSE A LA FIRMA DEL CONTRATO PAGANDO LO CONSIGNADO MÁS UN SEIS POR CIENTO DE INTERÉS.

Por su parte, el 2 de febrero de 2024, la Apelada presentó *Contestación a Recurso de Apelación* en el que solicitó que se confirme la *Sentencia* emitida el 8 de noviembre de 2023 así como la *Resolución* emitida el 28 de noviembre de 2023.

Con la comparecencia de las partes y presentado sus escritos, damos por perfeccionado el recurso de epígrafe. Examinado el expediente electrónico del Sistema Unificado de Manejo de Casos (SUMAC), procedemos a establecer el derecho aplicable y resolver.

**-II-**

**-*A*-**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. *Pueblo v. De Jesús Mercado*, 188 DPR 467, 478 (2013). Las decisiones de los tribunales de instancia merecen gran flexibilidad y deferencia, debido a que es el foro que conoce las particularidades del caso y son quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018); *Mejías v. Carrasquillo,* 185 DPR 288, 307 (2012).

Ahora bien, se ha reconocido que a pesar de la deferencia que merece la determinación apelada, la misma podría ser revocada si: (1) se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto o (2) si la prueba no concuerda con la realidad fáctica, es increíble o imposible. *Pueblo v. Santiago,* 176 DPR 133, 148 (2009). Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba

admitida, no exista base suficiente que apoye su determinación". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021).

De ordinario, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *WMM PFM, et al. v. Colegio et al.,* 211 DPR 871, 902-903(2023); *Dávila Nieves v. Melendez Marín,* 187 DPR 750, 771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717,741 (2007). Por lo que, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

*-B-*

El Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.,* según enmendado, (en adelante, "Código Civil de 1930"),[2] codificó las disposiciones que rigen las obligaciones y los contratos. En nuestra jurisdicción, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil de 1930, 31 LPRA sec. 2992. Sobre las obligaciones que nacen de los contratos, estas tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de estos. Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994; *López v. González,* 163 DPR 275, 281 (2004); *Mercado, Quilichini v. UCPR,* 143 DPR 610, 627 (1997). Nuestro derecho reconoce el principio de libertad de contratación o autonomía contractual entre las partes. *Álvarez v. Rivera,* 165 DPR 1, 17 (2005). El Art. 1207 del Código Civil de 1930,

---

[2] El Código Civil de 1930 fue derogado al aprobarse la Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.,* conocida como el "Código Civil de 2020", el cual estableció en su Art. 1812 que: "[l]os actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. En el recurso ante nos son de aplicación las disposiciones del derogado Código Civil de 1930 ya que el *Contrato* fue suscrito en el año 2019.

establece que, "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA sec. 3372. Así pues, los contratos serán obligatorios, cualquiera que sea la forma que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. Art. 1230 del Código Civil de 1930, *supra,* 31 LPRA sec. 3451.

Para que un contrato sea válido, este debe contener el consentimiento de los contratantes, un objeto cierto y causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391. Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. Art. 1214 del Código Civil de 1930, 31 LPRA sec. 3401. Por consiguiente, los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Una vez perfeccionado dicho contrato, éste tiene fuerza de ley entre las partes. Asimismo, el contrato adolece de validez y eficacia cuando el consentimiento otorgado consiste en una declaración de voluntad libre de vicios. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008). Lo anterior en virtud del Art. 1217 del Código Civil de 1930, que establece que el consentimiento será nulo cuando es prestado por error, violencia, intimidación o dolo. 31 LPRA sec. 3404. Por tanto, los que contravengan sus obligaciones o incurran en dolo, negligencia, o morosidad en estás, quedan sujetos a la indemnización de daños y perjuicios causados. Art. 1054 del Código Civil de 1930, 31 LPRA sec. 3018. Es por lo anterior que, el acreedor de una obligación recíproca tiene la facultad de exigir el cumplimiento o la resolución de su obligación con los daños y

perjuicios, así como el abono de intereses. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052.

### -C-

En el ordenamiento jurídico de Puerto Rico, el contrato de opción de compra se rige por lo establecido jurisprudencialmente, debido a que el derogado Código Civil de 1930 no contiene normas al respecto. *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 805-806 (1975). Nuestro más alto Foro ha definido el contrato de opción como "el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 246 (2002), citando a *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 583 (1989).

Sus requisitos esenciales son: (1) la concesión al optante de la facultad de decidir unilateralmente si celebrará o no el contrato principal sin obligación alguna por parte de éste; (2) que la concesión tenga un carácter exclusivo; (3) que se establezca un plazo para ejercer la opción; y (4) que no exista otra condición que no sea el propio juicio del optante. *Íd.*, citando a J. Castán Tobeñas, Derecho Civil Español, Común y Foral, Madrid, Ed. Reus, 14ta ed., 1988, T. IV, pág. 50.

Fundamentado en lo anterior, nuestro más alto Foro expresó que: "**a pesar de ser un contrato consensual, la opción de compra es un contrato unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel así lo decide**". *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001). (Énfasis suplido). En esencia, el contrato de opción otorga al optante la facultad de determinar, en el plazo concedido, si perfecciona el contrato definitivo. *Matos,*

*González v. SLG Rivera-Freytes, supra*, pág. 841.  Con el ejercicio de la opción por parte del optante se perfecciona la obligación de parte del concedente de vender y de parte del optante de comprar la cosa objeto del contrato. *Rosa Valentín v. Vázquez Lozada, supra*, pág. 810.

Por otra parte, en *Mayagüez Hilton Corp. v. Betancourt, supra*, pág. 249, nuestro Tribunal Supremo expresó que el optante puede ejercer su derecho de opción notificando al optatario su voluntad de perfeccionar el convenio por el cual optó, pero ese derecho queda extinguido con su renuncia o por el transcurso del plazo concedido sin que el optante ejerza la opción.  Además, el derecho del optante a declarar su voluntad de dar efectividad al contrato por el cual se opta, caduca, si ésta no es notificada al concedente durante la vigencia del plazo de la opción, si éste se hubiese fijado. *Íd.*  A su vez, si la opción se ejerce dentro del plazo acordado, dicho contrato queda extinguido por lo que se perfecciona el contrato aceptado según haya sido previamente delimitado. *Íd.*

Las normas generales sobre las obligaciones y los contratos se han aplicado al contrato de opción. *Matos, González v. SLG Rivera-Freytes*, 181 DPR 835, 842 (2011). Por tal razón, el principio de libertad de contratación rige en los contratos de opción de compra. *Íd.*; *SLG Irizarry v. SLG García, supra*, pág. 724-725.  Una vez las partes prestan su consentimiento, quedan entonces vinculadas por los términos del contrato, siendo este la ley entre las partes. *Matos, González v. SLG Rivera-Freytes, supra*, pág. 843.  Basado en estos principios, el alcance de la opción no se puede fijar sin tomar en cuenta el contenido específico que en el contrato se le imparte. *Íd.*; *Zeta Enterprises, Inc. v. ELA*, 145 D.P.R. 1, 10 (1998).  Por tanto, es fundamental observar las disposiciones incluidas en el contrato toda vez que estas reflejan la voluntad de las partes contratantes. *Íd.*

**-D-**

En virtud de lo anterior, el Art. 1233 del Código Civil de 1930, dispone que, **si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se interpretará en el sentido literal de la palabra**. 31 LPRA sec. 3471. Sin embargo, si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá la intención sobre las palabras". *Íd.* Asimismo, cuando los términos de un contrato, sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unisys v. Ramallo Brothers*, 128 DPR 842, 852 (1991). (Énfasis suplido).

Nuestra más alta curia se ha limitado a entrar en la interpretación de contratos únicamente en casos que sea verdaderamente necesario, toda vez que interpretar si un contrato es claro presupone concordar su letra con la intención de las partes. *Marcial v. Tomé*, 144 DPR 522, 537 (1997). En particular, nuestro Tribunal Supremo señaló lo siguiente: "[p]ara determinar cuál fue la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato; también se tomarán en consideración los actos anteriores a la contratación". *Íd.*, pág. 853; Art. 1234 del Código Civil de 1930, 31 L.P.R.A. sec. 3472.

Ahora bien, aunque hay que considerar la intención de las partes para interpretar los contratos, dicha interpretación tiene que ser cónsona con el principio de la buena fe y no puede conllevar a resultados incorrectos, absurdos e injustos. *SLG Irrizary v. SLG García, supra*, pág. 727. Los tribunales tienen la facultad y el deber de velar por el cumplimiento de los contratos. *Mercado, Quilichini v. UCPR, supra*, pág. 627. **Por tanto, no se debe relevar a una parte del cumplimiento de su obligación contractual, cuando el**

**contrato sea legal, válido y no contenga vicio alguno**. *Íd.* (Énfasis suplido).

**-III-**

Por estar intrínsecamente relacionados, discutiremos en conjunto el primer y segundo señalamiento de error. En síntesis, la señora González Bonilla alega que el TPI erró al declarar *Ha Lugar* la *Demanda* presentada por la Apelada y *No Ha Lugar* la *Reconvención* presentada por la Apelante, porque (1) la Apelada no está pagando el precio de la compraventa ni está ejerciendo su obligación de asumir la totalidad de la hipoteca, y (2) la señora Torres Rodríguez ha vivido la residencia por cuatro (4) años sin pagar renta por lo que procede imponerle el pago de una renta por la ocupación de la Apelada en la residencia. Contestamos en la negativa.

Tal como se desprende del contrato entre las partes, y de la contestación de la demanda, la Apelante aceptó que firmó un contrato de opción de compra y venta. Según se desglosa del mismo, las partes establecieron el precio de compraventa que la Apelada estaría asumiendo. De igual forma, pactaron dos (2) pagos en adelanto, que se abonarían al precio de la compraventa, lo cual reduciría sustancialmente el balance que la señora Torres Rodríguez asumiría posteriormente.[3]

Sobre el abono de la mensualidad pagada por la Apelada al precio de compraventa, resolvemos que en el *Contrato* se pactó expresamente sobre dicho adelanto al precio total de la compraventa. En el referido *Contrato,* se hizo constar lo siguiente: (1) la Apelante fijó la venta de la propiedad en la suma de $107,000.00; (2) la Apelada se obligó a pagar $10,000.00 por la Opción de compra y dicha cantidad se abonaría al precio de la

---

[3] Exhibit 11 del Recurso de Apelación, pág. 80-82.

compraventa de $107,000.00; (3) la Apelada se comprometió a pagar una mensualidad por la hipoteca que grava la propiedad que sería abonada al precio de venta acordado.[4] De lo anteriormente expuesto, observamos que las partes acordaron por escrito el abono de la mensualidad al precio de venta de la propiedad. **El foro primario determinó que posteriormente fue la Apelante quien no estuvo de acuerdo con otorgar la escritura de compraventa porque entendía que estaba perdiendo dinero en la transacción**.[5]

Igualmente, el TPI dio credibilidad a los testimonios de ambas otorgantes sobre las circunstancias previas, coetáneas y posteriores al otorgamiento del Contrato, quedando convencido que la mensualidad pagada por la Apelada debía ser honrado al precio de venta acordado. Resulta evidente que las palabras en el *Contrato* son claras y no hay margen para una interpretación distinta. Reafirmamos que, si los términos de un contrato o una cláusula contractual son lo suficientemente claros como para entender lo que se pacta, hay que atenerse a su sentido literal y, por ende, los tribunales no pueden entrar a dirimir sobre lo que las partes alegadamente intentaron pactar al momento de contratar. *Andréu Fuentes y otros v. Popular Leasing*, 184 DPR 540, 568 (2012). **En síntesis, avalamos la determinación del TPI de ordenarle a la señora González Bonilla al estricto cumplimiento del *Contrato* y a comparecer a firmar la escritura de compraventa de la propiedad objeto del presente caso.**

Por otra parte, la Apelante aduce que la señora Torres Rodríguez le adeuda $25,000.00 en concepto de renta por ocupar la residencia gratuitamente. *No le asiste razón.*

Reafirmarmos que está expresamente plasmado en el *Contrato* la forma en que la Apelada adquiriría la propiedad. En ninguna

---

[4] *Íd.*
[5] Exhibit 3 del Recurso de Apelación, pág. 028.

cláusula se incluye el pago de una renta por razón de que la Apelada resida en la propiedad. **Se desprende con claridad que, el *Contrato* es uno de compraventa y no de arrendamiento**.

El foro primario determinó la no existencia de un contrato de arrendamiento, lo cual acogemos. Según el Art. 1433 del Código Civil de 1930, 31 LPRA sec. 4012, en un contrato de arrendamiento, una parte se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. La principal obligación de un arrendatario es el pago de la renta en la forma, modo y condiciones establecidas en el contrato de arrendamiento. Art. 1445 del Código Civil de 1930, 31 LPRA sec. 4052. Estos elementos no se desprenden de forma alguna del *Contrato* otorgado entre las partes y no existe acuerdo adicional, verbal ni escrito, que nos permita concluir lo contrario. Por lo que es forzoso concluir que *no se cometieron los errores señalados.*

En cuanto al tercer señalamiento de error, la señora González Bonilla alega que el TPI le ha impedido ejercer su derecho pactado de retractarse a la firma del *Contrato* pagando lo consignado más un 6% de interés.  La cláusula a la que se refiere lee como sigue:

> ---DÉCIMO SEPTIMO: De no poderse llevar esta transacción de Opción de Compraventa de la propiedad aquí descrita, los Vendedores devolverán el dinero consignado, pagando un interés al 6% como penalidad si fuera por su culpa.

Conforme lo anterior, la Apelante argumenta que se pactó una "cláusula de escape" para la parte vendedora donde se le "daba la facultad de negarse a la obligación de vender, so pena del pago de una penalidad consistente en devolver lo pagado por la optante más el 6% de interés de penalidad si fuera por su culpa" según surge del contrato entre las partes.[6] Además, la Apelante expresa en su *Recurso,* que "la parte demandante sabía que la demandada se podía

---

[6] *Íd.*, pág. 82.

negar a vender y que tendría que devolver lo consignado más una penalidad del 6% de interés del dinero recibido".[7] **Primeramente, hacemos constar que la frase "negarse a la obligación de vender" ciertamente resulta contradictoria, toda vez que en la misma reconoce que tiene una obligación de vender. En segundo término, destacamos que, en un contrato de opción de compraventa, el obligado es el optatario. Pues adviértase que, "el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante".** *PDCM Assoc. v. Najul Bez,* 174 DPR 716, 724 (2008). (Énfasis suplido).

Como podemos observar, la opción de vender en un contrato de opción de compra no es optativa de la parte Apelante. Que ahora la señora González Bonilla quiera retractarse porque "entendía que perdería mucho dinero en la transacción", atenta contra la figura jurídica misma del contrato de opción.[8] La señora González Bonilla no tiene derecho a llevar a cabo tales actuaciones, toda vez que la señora Torres Rodríguez ostenta un derecho preferente por ser la optante de la protección que le brinda a la figura jurídica del contrato de opción de compra. La interpretación correcta de dicha cláusula consiste en darle una protección a la inversión monetaria de la optante mientras pagara la mensualidad del pago de hipoteca sin haber otorgado la escritura de compraventa. **Por consiguiente, es incorrecto el planteamiento de la Apelante en cuanto a que podía negarse a vender y, de esa manera, devolver lo pagado por la señora Torres Rodríguez. Las causas imputadas que contempla el contrato no cobijan las actuaciones de mala fe contractual llevadas a cabo por la señora González Bonilla.**

---

[7] *Íd.,* pág. 82.
[8] Exhibit 3 del Recurso de Apelación, pág. 028.

El Tribunal Supremo de Puerto Rico definió "**el contrato de opción de compra como un convenio por el cual el optatario concede al optante, por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal**". *Mayagüez Hilton Corp. v. Betancourt, supra,* pág. 246. (Énfasis suplido). En virtud de lo anteriormente expuesto, es requisito esencial que la concesión tenga un carácter exclusivo. **Dicho de otro modo, sólo el optante, es decir la señora Torres Rodríguez, es quien tiene el derecho de decidir si va a comprar o no, por el término dispuesto en el contrato. Por tanto, no se le deja al arbitrio al optatario de retractarse del contrato de opción.**

Adviértase que, la referida cláusula no es una "de escape" tal como lo indica la Apelante. Dicho de otro modo, la referida cláusula de ningún modo elimina o limita que la optante ejerza su derecho de opción de compra. Es decir, la señora Torres Rodríguez estaba en toda su facultad de ejercer su derecho de opción de compra dentro del término acordado.

Aun así, si evaluamos la intención de las partes, a base de la prueba desfilada y admitida que obra en el expediente, resulta evidente que la Apelante: (1) entregó las llaves a la Apelada y conocía que ésta estaba viviendo la propiedad; (2) consintió a que la Apelada realizara mejoras y se encargara del mantenimiento de la propiedad; y (3) no realizó esfuerzos para que la Apelada desalojara la residencia. No puede la señora González Bonilla ahora, pretender que hagamos caso omiso a lo que de buena fe acordó con la Apelada, principalmente cuando, una vez perfeccionado el referido contrato, éste tuvo fuerza de ley entre las partes. El contrato fue legal, válido y no contenía vicio alguno, por tanto, no se debe relevar a una parte

del cumplimiento de su obligación contractual. *Mercado, Quilichini v. UCPR, supra*, pág. 627. *No se cometió el error señalado.*

A la luz de la situación de hechos y las normas jurídicas previamente expuestas, entendemos que estamos ante un contrato claro, que no deja lugar a dudas sobre la intención de los contratantes. Por todo lo cual, determinamos que el TPI fundamentó correctamente sus determinaciones.

**-IV-**

Por los fundamentos expuestos, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones